(113 P.3d 266)
No. 90,004

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellant/Cross-appellee,* v. MARK BENTON, *Appellee,* and KATHRYN L. BENTON, *Appellee/Cross-appellant.*

Opinion filed September 17, 2004.

*Richmond M. Enochs* and *James L. Mowbray,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellant/cross-appellee.

*Donald W. Vasos,* of Vasos Law Offices, of Fairway, for appellee/cross-appellant Kathryn L. Benton.

Before RULON, C.J., ELLIOTT and MALONE, JJ.

ELLIOTT, J.: State Farm Mutual Automobile Insurance Company (State Farm) filed a declaratory judgment action against its

alleged insureds, Mark and Kathryn Benton, claiming its policy provided no coverage for an auto accident involving Kathryn. The trial court granted summary judgment in favor of the Bentons, finding coverage. State Farm appeals, and Kathryn cross-appeals. We reverse and remand the appeal and affirm the cross-appeal.

In the beginning, Mark and Kathryn were married and owned two vehicles—a 1996 Ford pickup and a 1997 Honda—both were insured by State Farm. The policy on the Honda named the "insured" as Mark and Kathryn. After February 1998, the Honda policy was renewed every 6 months. On October 17, 2000, Mark and Kathryn were divorced. The property settlement agreement awarded the Honda to Kathryn and required Mark to pay the premium on the Honda until December 31, 2000. The State Farm agent, Deborah Swinney, was notified the divorce became final.

Kathryn moved to California with the Honda, and she told Mark she was looking for coverage on her Honda. In late December 2000, Mark sent a check to State Farm to keep coverage on the Honda until January 22, 2001.

On January 2, 2001, Mark called Swinney to cancel the policy on the Honda, stating Kathryn had coverage in California and he was no longer responsible for the coverage. Swinney did not request an address or phone number for Kathryn because she was not licensed to write coverage in California. Kathryn never contacted Swinney to transfer the policy to California. Swinney stated the policy was cancelled as of January 3, 2001, at 12:01 a.m.

On January 2, 2001, at about 11:45 p.m., Pacific Standard time (1:45 a.m., January 3, Central Standard time), Kathryn, while driving the Honda in California, was struck and injured by a car driven by Sean Wheeler. State Farm cancelled the policy effective January 3, 2001, at 12:01 a.m. Central Standard time. On January 9, 2001, Kathryn faxed a letter to State Farm requesting continuing coverage on her car, asking State Farm to ignore any actions by Mark in cancelling the coverage.

Both parties moved for summary judgment; the trial court granted summary judgment to Kathryn. State Farm appeals, and Kathryn cross-appeals.

## The appeal

State Farm claims the trial court erred in its interpretation of K.S.A. 40-3118(b), which provides:

"Except as otherwise provided in K.S.A. 40-276, 40-276a and 40-277, and amendments thereto, and *except for* termination of insurance resulting from non-payment of premium or *upon the request for cancellation by the insured*, no motor vehicle liability insurance policy, or any renewal thereof, shall be terminated by cancellation or failure to renew by the insurer until at least 30 days after mailing a notice of termination, by certified or registered mail or United States post office certificate of mailing, to the named insured at the latest address filed with the insurer by or on behalf of the insured." (Emphasis added.)

The policy in question provided the following under the "CONDITIONS" section:

"1. Policy Changes

. . . .

"b. Change of Interest. No change of interest in this policy is effective unless we consent in writing. . . .

. . . .

"d. Joint and Individual Interests. When there are two or more named insureds, each acts for all to cancel or change the policy.

. . . .

"4. Cancellation
"How You May Cancel. *You* may cancel *your* policy by notifying us in writing of the date to cancel, which must be later than the date *you* mail or deliver it to us. We may waive these requirements by confirming the date and time of cancellation to *you* in writing."

In the trial court, State Farm argued Mark effectively cancelled the coverage on the Honda for both him and Kathryn based on the quoted policy language. The trial court granted summary judgment in favor of Kathryn, holding that "the language of K.S.A. 40-3118(b) trumps the strict language of the policy and imposes upon the insurer an obligation to notify the insured of the cancellation, or at least to make reasonable attempts to do that, neither of which was done in this case."

The question for decision, obviously, is whether State Farm had a duty to notify Kathryn of the cancellation made by Mark. Kathryn urges us to adopt as public policy a rule prohibiting a coinsured

from cancelling the insurance policy without notice to the other coinsured.

K.S.A. 40-3118(b) does not impose a duty to give notice to all coinsureds when one insured cancels the policy. Cancellation by the insured is an exception to the rule of required 30-day notice found in 40-3118(b). This statute does not give the trial court authority to impose the notice requirement it adopted. Thus, the trial court's decision can only be justified by the "public policy" espoused by it. We hold the peculiar facts of this case are not suitable to the adoption of the public policy rationale for the first time in Kansas, compared to the facts of the cases from other states cited by Kathryn.

If the policy urged by Kathryn is to become the public policy of this state, that declaration must come from our Supreme Court or the Kansas Legislature.

In this case, Kathryn knew Mark would not be responsible for paying for the insurance on the Honda after January 1, 2001. She had actual knowledge of that fact from the property settlement agreement she signed in August 2000. She therefore had almost 4 months in which to obtain coverage in California.

We have held K.S.A. 40-3118(b) did not impose a duty on State Farm to inform Kathryn of the cancellation, nor is there any language in the policy imposing such a duty. In fact, the policy language is clear. The policy states that when there are two or more named insureds *each acts for all to cancel or change the policy*. That language is not trumped by the language of K.S.A. 40-3118(b), nor is it trumped by any public policy.

Where policy language is straightforward, clear, and unambiguous, our function is to enforce the insurance contract as written; we are not free to make another contract for the parties. And in this regard, we should not strain ourselves to create an ambiguity where, in common sense, there is none. *Bell v. Patrons Mut. Ins. Ass'n*, 15 Kan. App. 2d 791, 794, 816 P.2d 407, *rev. denied* 249 Kan. 775 (1991).

The trial court erred in granting summary judgment in favor of Kathryn, and that brings us to the cross-appeal.

*The cross-appeal*

On her cross-appeal, Kathryn essentially suggests alternative grounds on which the trial court could be affirmed, assuming we reject the public policy rationale of the trial court. Kathryn argues State Farm failed to provide written confirmation of cancellation as an alternative means of affirming the trial court. Kathryn argues that since she never received the confirmation at her address in California, the cancellation was not effective. Essentially, she argues there is no evidence to show State Farm made certain she knew of the cancellation.

State Farm argues the confirmation provision is for the benefit of the insurer in order to memorialize what had already occurred and is, therefore, waivable by State Farm. See *State Farm Auto. Ins. Co. v. James*, 562 N.E.2d 777, 781 (Ind. App. 1990).

Here, Kathryn's argument is that she was entitled to receive notice of the cancellation request before cancellation could be effective. We have already held State Farm could cancel the policy on Mark's request without notifying Kathryn. Accordingly, this argument fails.

Kathryn also makes a couple of arguments regarding the timing of the effect of cancellation, claiming cancellation occurred 10½ hours after her accident and that the cancellation, in any event, should be effective at 12:01 a.m. Pacific Standard time on January 3, 2001. Regardless of what procedure State Farm had as its internal processing of the cancellation request, Mark conveyed his intention of cancelling the policy to agent Swinney and understood State Farm would cancel the coverage on the Honda effective January 3, 2001, at 12:01 a.m. The trial court specifically found as a fact that the time of the cancellation would be at 12:01 a.m. Central Standard time under the language of the policy. That was 1 hour and 45 minutes before Kathryn's accident. These arguments fail.

Finally, Kathryn argues State Farm was obligated to issue her a separate policy and declaration page with only her name listed when she moved to California. This argument is still based on the premise that State Farm was required to provide her with a separate policy. But Kathryn did not contact State Farm to request

that policy change and did not provide State Farm with her California address. We can find nothing to support a ruling that State Farm was obligated to stall the cancellation request until it somehow verified Kathryn had obtained new coverage in California.

The appeal is reversed and remanded with directions to enter judgment in favor of State Farm. The cross-appeal is affirmed.

Affirmed in part, reversed in part, and remanded with directions.